UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
In Admiralty
No. 4:19-cv-145-BO

| | |
|---|---|
| U.S. WIND, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) O R D E R |
| U.S. WIND MET MAST TOWER, *in rem* | ) ) ) |
| Defendant, | ) ) |

This matter comes before the Court on Intervenor Intermoor's motion for the Court to order the Met Mast Tower removed from the barge [DE 43] and on U.S. Wind's motions to approve a special bond [DE 47], to apportion *custodia legis* costs [DE 49], and to stay the proceedings [DE 52].

## BACKGROUND

The Court dispenses with a full recitation of the case and adopts the factual and procedural background that the Court provided in its December 10 order. [DE 40].

On January 3, InterMoor moved for the Court to force U.S. Wind to remove the Met Mast Tower ("the Tower") from the Marmac-261 barge, to pay past charter, and to pay all fees for the barge until the Tower is removed. [DE 43]. On January 8, InterMoor moved for an emergency hearing. [DE 44]. On January 10, U.S. Wind filed four motions: (1) for approval of a special bond pursuant to Admiralty Rule E(5)(a); (2) to approve the substitute custodian's release of cargo not subject to arrest or attachment; (3) for equal apportionment of *custodia legis* costs; and (4) to stay proceedings. [DE 47, 48, 49, 52]. The Court held a hearing in these matters on January 14, 2020.

Following the hearing the Court issued an order granting U.S. Wind's motion to release property not subject to arrest or attachment. [DE 55]. The Court further ordered that the parties stipulate to the value of the special bond by January 27, 2020 and that InterMoor respond to U.S. Wind's motion on *custodia legis* expenses by the same date. InterMoor has responded to the *custodia legis* motion but the parties have not stipulated to the value of the special bond.

## DISCUSSION

*Motion to Approve Special Bond*

On January 10, U.S. Wind moved the Court to approve a Special Bond pursuant to Supplemental Admiralty Rule E(5)(a). The motion indicates that Aspen Company, as Surety, is willing to post a Special Bond in the amount of $3,500,000. At the January 14 hearing, InterMoor represented that, though it believed $3.5 million was in the general ballpark of the proper value of the bond, it wanted additional time to conduct due diligence and negotiate with U.S. Wind. In its January 14 order, the Court granted the parties until January 27 to stipulate to the value of the bond.

Neither party has made a subsequent filing with respect to the value of the bond. "Whenever process of maritime attachment and garnishment or process in rem is issued the execution of such process shall be stayed, or the property released, on the giving of security, to be approved by the court or clerk, or by stipulation of the parties . . . ." Fed. R. Civ. P. Supp. E(5)(a). "In the event of the inability or refusal of the parties so to stipulate the court shall fix the principal sum of the bond or stipulation . . . ." *Id.*

It appears that the parties have been unable to stipulate to the value of the bond to be posted. Consequently, the Court grants U.S. Wind's motion, and approves the Special Bond to be

2

posted by the Surety in the amount of $3,500,000. The Court releases the Met Mast Tower from arrest and attachment, as the bond shall serve as substitute *res*.

*Motion to Remove the Met Mast Tower*

U.S. Wind's Tower is currently under *in rem* arrest in the Port of Morehead City, NC. Because the Tower is secured to the barge Marmac-261, the barge is also, effectively, arrested in the Port of Morehead City. InterMoor has been paying the daily charter fees because it had hired the barge as part of its contract with U.S. Wind to transport and install the Tower off the coast of Ocean City, Maryland. The barge is owned by McDonough Marine.

InterMoor asks the Court to order that U.S. Wind remove the Tower from the barge. U.S. Wind opposes this motion. At the January 14 hearing, U.S. Wind represented to the Court that it would be extremely expensive to bring cranes to the Port of Morehead City that are large enough to remove the Tower from the barge. U.S. Wind proposes contracting directly with McDonough Marine, and hiring its own tug, to transport the Tower to safekeeping near Maryland.

In the interests of economy and mitigating the already substantial costs associated with this dispute, the Court denies InterMoor's motion. The Court will not compel the Tower to be removed from the Marmac-261, and to the extent that McDonough Marine is willing to contract directly with U.S. Wind, U.S. Wind is free to do so.

*Motion for Apportionment of Custodial Costs*

U.S. Wind moves for equal apportionment of all *custodia legis* costs. "The district court enjoys broad equitable authority over the administration of maritime seizures." *Beauregard, Inc. v. Sword Servs. LLC*, 107 F.3d 351, 354 (5th Cir. 1997). "Courts routinely enter orders that divide the *custodia legis* expenses among the parties of an *in rem* action." *Id.* at 353.

The Court orders that all *custodia legis* expenses be apportioned equally from the initial date of the *in rem* arrest of the Tower, October 10, 2019. The Court finds that this is the most equitable division of costs. It is true that U.S. Wind was the party that moved the Court to arrest the Tower. But InterMoor is not without culpability for this *in rem* action. Without expressing any view of the merits of the underlying contract dispute between the parties, which is being dealt with in two separate district courts, the Court simply notes that when confronted with a potential contract dispute as to the Tower, property owned by U.S. Wind, InterMoor made a strategic calculation to direct the tug and barge to depart the Delaware Bay with the Tower. It was this decision that precipitated U.S. Wind's *in rem* action. Moreover, while the Court did not hold a hearing granting InterMoor's motion to intervene until December 5, InterMoor filed its motion to intervene just one day after the Tower was arrested. [DE 14]. And through this *in rem* action, InterMoor was able to compel U.S. Wind to post $3.5 million in security.

Considering all this, the Court finds that *custodia legis* costs incurred from the date of initial arrest should be apportioned equally between the two parties. Some weeks have elapsed since U.S. Wind's initial motion, and so the Court does not know the exact costs requiring apportionment. The Court also does not know how much each of the respective parties have paid thus far. The parties seem to agree, however, that daily *custodia legis* costs are $5,836.35. This is comprised of the Marmac's daily charter of $3,475, Stevens Towing's daily custodian fee of $600, and daily port fees of $1,311.35. With this as a daily rate, the Court estimates that, as of the date of this order, total *custodia legis* costs are about $647,835.

Accordingly, the parties have thirty (30) days to apportion *custodia legis* charges incurred and those already paid, and tender any outstanding amounts owed to the other party or vendors.

4

The three line-items (Marmac-261 charter, Stevens custodian fees, and port fees) that seem to constitute the bulk of the *custodia legis* costs are to be split evenly.

At both hearings, U.S. Wind represented to the Court that McDonough Marine is ready to contract directly with U.S. Wind to transport the Tower to Maryland, and that this was U.S. Wind's preferred course of action. As such, following this order, U.S. Wind is solely responsible for Stevens Towing's fees and the Port Fees. Obviously, if U.S. Wind contracts with McDonough Marine to charter the Marmac-261, U.S. Wind is responsible for those costs.

*Motion to Stay Proceedings*

Finally, U.S. Wind moves to stay the proceedings pending resolution of a motion to dismiss in a related case in the Southern District of Texas. Following their contract dispute, InterMoor sued U.S. Wind in the Southern District of Texas and U.S. Wind sued InterMoor in the District of Maryland. The case in Maryland is stayed pending resolution of a motion to dismiss in the Texas case. InterMoor does not object to U.S. Wind's motion here.

The Court grants the motion and stays this proceeding. Once the motion to dismiss is resolved, the parties shall inform the Court of necessary next steps, including whether this case should be transferred to either of the other districts.

## CONCLUSION

InterMoor's motion [DE 43] for the Court to compel U.S. Wind to remove the Tower from the Marmac-261 is DENIED.

U.S. Wind's motion [DE 47] to approve a Special Bond is GRANTED. It is ORDERED that the Special Bond to be posted by Aspen Company as Surety in the amount of $3,500,000.00 is approved in form, content and amount pursuant to Rule E(5)(a) of the Supplemental Rules of Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, that the Special Bond

shall be posted by Aspen Company as Surety in the amount of $3,500,000.00 within one week of the date of this Order, and that upon filing (posting) of the Special Bond, the U.S. Wind MET Mast Tower shall be deemed released from arrest and attachment pursuant to Rule E(5)(c), without further order of this Court.

U.S. Wind's motion [DE 49] for equal apportionment of *custodia legis* costs is GRANTED; *custodia legis* costs incurred since the date of arrest, October 10, 2019, shall be apportioned equally.

Finally, the motion [DE 52] to stay is GRANTED. This action is STAYED pending resolution of the motion to dismiss in the related case *InterMoor, Inc. v. U.S. Wind, Inc.*, No. 4:19-cv-03823 (S.D. Tex.). The parties shall alert the Court when this motion is resolved.

SO ORDERED, this __29__ day of January, 2020.

_____
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE