UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
In Admiralty
No. 4:19-cv-145-BO

| | |
|---|---|
| U.S. WIND, INC., <br>     Plaintiff, <br> <br> v. <br> <br> U.S. WIND MET MAST TOWER, *in rem*, <br>     Defendant, <br> <br> INTERMOOR, INC., <br>     Intervenor, <br> <br> v. <br> <br> U.S. WIND INC., *in personam*, and U.S. WIND MET MAST TOWER, *in rem*, <br>     Defendants. | O R D E R |

This cause comes before the Court on InterMoor's motion to reconsider [DE 59], MARMAC, LLC's motion to intervene [DE 66], and U.S. Wind's motion to transfer the case to the District of Maryland [DE 64]. For the reasons discussed below, the motions to reconsider and to intervene [DE 59, 66] are DENIED; the motion to transfer [DE 64] is GRANTED.

BACKGROUND

The Court dispenses with a full recitation of the case. On January 29, 2020, the Court (1) denied InterMoor's motion to compel U.S. Wind to remove the Met Mast Tower (hereinafter "Tower") from the Marmac-261 barge, (2) approved a special bond and released the Tower from arrest and attachment, (3) ordered that *custodia legis* costs incurred between October 10, 2019 and January 29, 2020 be apportioned equally between U.S. Wind and InterMoor, and (4) stayed the case pending resolution of a motion to dismiss in a related case in the Southern District of Texas.

Instead of conferring with each other and working together to expeditiously calculate expenses and settle with relevant vendors, the parties have adopted an uncoordinated approach to paying the *custodia legis* expenses. The parties offer widely divergent accounts as to who has paid how much and to whom. The parties also disagree as to whether services rendered by Moran Towing, Louisiana International Marine (hereinafter "LIM"), and the U.S. Marshals Service should be included in the equally apportioned *custodia legis* costs. The consequence of this disagreement is that the Tower has remained in the Port of Morehead City for almost three additional months despite not being subject to any arrest or attachment order from this Court.

InterMoor now asks the Court to reconsider its previous order and compel U.S. Wind to remove the Tower from the barge or pay the barge charter until it does so [DE 59]. MARMAC, LLC d/b/a McDonough Marine Service (hereinafter "MMS"), the owner of the barge upon which the Tower is secured, now moves for the first time to intervene in this dispute [DE 66], asking the Court to order either U.S. Wind or InterMoor to pay its daily charter [DE 68] and for a hearing [DE 70]. Finally, U.S. Wind moves to transfer the case to the District of Maryland [DE 64].

DISCUSSION

MMS's Motions

The Court arrested the Tower on October 10, 2019. Because the Tower was secured to the Marmac-261 barge, the barge was also, in effect, arrested. InterMoor moved to intervene almost immediately. LIM, the owner of the tugboat pulling the Marmac-261, moved to intervene on November 11, 2019. MMS made no attempt to intervene in the case.

Now, months after U.S. Wind initiated this action, and after the Court released the Tower from arrest/attachment and ordered apportionment of costs, MMS moves to intervene.

"A party seeking to intervene under either Federal Rule of Civil Procedure 24(a) or 24(b) may do so only upon the filing of a 'timely motion.'" *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014). A district court assesses three factors in making a timeliness determination: "first, how far the underlying suit has progressed; second, the prejudice any resulting delay might cause the other parties; and third, why the movant was tardy in filing its motion." *Id.* Each of the factors weighs against MMS.

For the first factor, MMS seeks to intervene at what is essentially the conclusion of proceedings in this district. This case began as an *in rem* action filed by U.S. Wind to prevent its Tower from being taken to Louisiana. InterMoor successfully intervened and was able to compel U.S. Wind to post a $3.5 million bond as security. The Court released the Tower on January 29 and has been asked to transfer the case to another district. MMS appears to have waited until the last possible moment to try to intervene and assert its interests.

Second, allowing MMS to intervene here would prejudice both InterMoor and U.S. Wind. Their underlying contract dispute is pending in an action in the District of Maryland. This action appears to be stayed pending resolution of the issues before this Court. Allowing MMS to intervene would further delay the proceedings in Maryland, prejudicing both Intermoor and U.S. Wind.

Third, MMS offers no justification as to why it waited until March 2020 to move to intervene in this dispute. MMS does not claim that it was unaware that U.S. Wind's Tower—which is secured to MMS's barge—had been arrested by this Court in October 2019. The Court has already held two separate hearings in which MMS could have asserted its interests. Without any justification for its tardiness, the third factor weighs against MMS in the timeliness determination.

Accordingly, MMS's motion to intervene is not timely and is therefore denied. Because the Court denies MMS's motion to intervene, the Court also denies MMS's other motions [DE 68, 70].

Remaining Motions

InterMoor's request for the Court to reconsider its prior order [DE 59] is denied.

U.S. Wind is solely responsible for costs to the U.S. Marshals Service and Moran Towing. U.S. Wind and InterMoor are equally responsible for services rendered by LIM between October 10 and October 15. The Court discharged LIM as custodian on October 15, and U.S. Wind is entitled to no reimbursement for any funds paid for services rendered by LIM after October 15.

U.S. Wind's motion to transfer the case to the District of Maryland [DE 64] pursuant to 28 U.S.C. § 1404(a) is granted. U.S. Wind and InterMoor filed breach of contract actions in Texas and Maryland, respectively. The Texas action has been dismissed and the parties' substantive claims are currently pending in Maryland. The parties have no connection to the Eastern District of North Carolina aside from the location of the Tower at the time of its arrest, and now that the Tower has been released from arrest and attachment, there is no longer any physical property over which this district must maintain supervision. Furthermore, the convenience of the parties and witnesses favor Maryland. The underlying contract involved the installation of the Tower in Maryland and the alleged breach appears to have occurred in Maryland. Additionally, U.S. Wind's principal place of business is in Maryland. Transfer to Maryland is appropriate under § 1404(a).

## CONCLUSION

For the reasons discussed above, motions DE 59, 66, 68, 70, and 72 are DENIED. The motion to transfer to the District of Maryland, DE 64, is GRANTED. The Court TRANSFERS this action to the District of Maryland.

SO ORDERED, this __15__ day of April, 2020.

_Terrence Boyle_
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE